(49 App. Div. 114.)

### In re MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    March 9, 1900.)

1. MUNICIPAL CORPORATIONS—STREETS—CONDEMNATION—ASSESSMENT OF DAMAGES.

Where commissioners appointed to assess the damages sustained from the taking of private property for a public street had not completed their valuations before January 1, 1898, when the charter of the city of New York took effect, their assessment for the benefits of such improvement was properly limited to one-half the value of the property as valued by them, as required by said charter, instead of one-half the value as valued by the tax commissioners.

2. SAME—INTEREST.

Greater New York Charter, § 990, providing that, in condemnation proceedings instituted by the "board of public improvements," the commissioners appointed to assess damages for the property taken by the city shall allow the property owner interest on their award from the date of the vesting of title in the city to the date of the commissioners' report, "as a part of the compensation to which the owner is entitled," does not apply to such proceedings instituted under the consolidation act before the new charter became a law.

Appeal from special term.

In the matter of the application of the mayor, aldermen, and commonalty of the city of New York relative to the opening of 175th street. From an order of the special term overruling objections to the confirmation of the report of the commissioners appointed to assess damages for said street opening (62 N. Y. Supp. 45), the city of New York appeals. Modified and affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

John P. Dunn, for appellant.

Henry G. Atwater, Joseph A. Flannery, Ernest Hall, James A. Deering, and Charles V. Gabriel, for appellees.

BARRETT, J.    We have here once more, though in another form, the questions which were presented in Re Mayor, etc., of City of New York, 40 App. Div. 452, 58 N. Y. Supp. 100. They arise under somewhat different circumstances. In the case referred to, the commissioners had completed their valuations before the 1st day of January, 1898, when the present charter of the city of New York took effect. We held that they were not thereafter bound to recommence and make new valuations upon the principles prescribed by the present charter. In the proceedings at bar, the commissioners had not completed their valuations before the 1st day of January, 1898. There were but three hearings prior to that

date, when testimony was taken.   There were several further hearings in January and February, and additional claims were filed in the latter month.   It was not until after the 16th of February, 1898, which was the last day upon which testimony was offered, that the commissioners commenced to consider their preliminary report of awards and assessments for value.   They did not limit their assessments for benefit to one-half the value of the property assessed as valued by the tax commissioners, but to one-half such value "as valued by them."   We think this ruling was correct.   It was in accord with what we held in Re Mayor, etc., of City of New York, supra, namely, that the new rule as to valuation laid down by the present charter is substantially in the nature of a rule of evidence, and would have governed the commissioners had it gone into effect prior to their action under the earlier rule.   The ruling was also within the principle of a later case in this court:   In re Mayor, etc., of City of New York, 46 App. Div. 52, 61 N. Y. Supp. 437.   The precise question in the latter case was whether the commissioners of estimate should assess one-half the value of the property as valued by the tax commissioners immediately prior to the acquisition of title by the city, or as valued by the tax commissioners immediately prior to their own (the commissioners of estimate's) action.   We held that the last valuation of the tax commissioners preceding the ascertainment of benefit governed.   An assessment for benefit proceeds upon a different principle from an award for property taken.   The latter is governed by the rules applicable to eminent domain;   the former, by those relating to the taxing power.   In a general sense, as was observed in Re Mayor, etc., of City of New York, supra, "the assessment for benefit accrued" when the title to property taken by the city for a public use vests, and the property owners' right to just compensation therefor attaches;   that is, the right to assess accrues, but not the duty to assess at any particular time or in any particular manner.   This is obvious when we consider the nature of the two proceedings, with the limitations upon each.   The one results in an award for the property taken, and the other in an assessment for benefit.   They need not proceed pari passu.   In the one case the constitution protects the property owner so far as to require just compensation to be made to him for the property taken;   in the other, the taxing power is limited only by the benefit received.   The extent of that benefit, and the proper assessment therefor, may be the subject of an independent proceeding.   It was competent for the legislature to charge property assessed with the entire benefit which as matter of fact it derives from the improvement, and consequently it could lawfully prescribe how much less than the entire benefit should be assessed.   That is all it has done here.   In no case can the commissioners assess more than the entire benefit.   But within that limit they must not exceed one-half of the value of the property as valued by themselves.   It was entirely competent for the legislature, at any time before the completion of the assessment for benefit, to prescribe the extent to which it should be reduced, and the manner in which that reduction should be effected.   The legislature has in effect provided, and provided constitutionally,

that the ascertained benefit shall not be assessed to any greater extent than one-half of the value of the property, and that the commissioners shall themselves ascertain, in a different manner from that formerly prescribed, what such one-half of the value is. This could properly be done while the commissioners were proceeding to ascertain the benefit derivable from the improvement, and the legislative instruction on that head, given at any time before the completion of the commissioners' duties, was their controlling guide.

The remaining question is whether the commissioners were right in not including in their awards, and in making no provision in their assessments for, interest on the awards from the time when title was acquired by the city down to the date of their report. We think that this ruling was, also, correct, within the principle of In re Mayor, etc., of City of New York, supra. It is contended, however, that, as the commissioners in the present proceeding had not completed their valuations when the new charter went into effect, they were governed in this particular by section 990 of that act. This section requires, in cases coming within its purview, the allowance of interest from the date of the vesting of title to the date of the commissioners' report, "as a part of the compensation" to which the owner is entitled. It is difficult to perceive the basis of this contention. The present proceeding was not instituted under this section 990. It was instituted under the consolidation act, before the new charter became a law. This section 990 is original legislation, and the provision in question relates in terms to proceedings instituted under it. It provides for a "board of public improvements," constituted differently from the old board of "street opening and improvement." It gives the new board power to acquire lands for the new city, and, in a manner specially defined, to vest title thereto in such new city. The power upon the latter head varies in important particulars from that conferred upon the former board of street opening and improvement, under the consolidation act, as amended by chapter 660 of the Laws of 1893, and again by chapter 449 of the Laws of 1895. It is "in such cases," to quote the words of this section 990 (that is, in cases where the new board has exercised its judgment for the benefit of the new city, and has given the precedent directions which the section makes a prerequisite to the summary vesting of title), that the commissioners are required to allow interest as part of the owners' compensation. That interest is to be allowed from the date of the vesting of title in "the city of New York," not from the vesting of title in "the mayor, aldermen, and commonalty of the city of New York." Every word of the section is this regard imports futurity. The contention proceeds upon the notion that continuity is attached to every provision in the present charter. That, however, is a mistake. There are, as we have already decided, many provisions in that enactment which are but continuations of the prior existing law. That already discussed with regard to valuation for benefit is one of these. That is, in effect, in the nature of an amendment to the consolidation act. But there is also, and necessarily, much original legislation, and that contained in section 990 is essentially of this character. It would be practically impossible to adapt the provisions of section 990 to proceedings al-

ready instituted and pending under the consolidation act. How, for instance, could title already vested in the city upon the exercise of judgment by a former board be thereafter vested in the new city? There is no pretense that the new board here attempted to direct such an impossibility. It is only where the new board has acted upon an original proceeding presented for its consideration, and has given its direction therein under the authority conferred by section 990, that the commissioners are required to add the interest to the principal, and report the total sum as the owner's compensation. There can be no doubt, therefore, that the commissioners here ruled correctly in reporting on this point as required by the provision of the consolidation act. That provision, as we held in Re Mayor, etc., of City of New York, supra, is continued by sections 1614 and 1608 of the present charter. This construction lends harmony to these acts in their mutual relations. Where it is apparent that original legislation was contemplated, the provisions of such legislation can only have been intended to apply to proceedings instituted under them. Prior proceedings, not contemplated by such original legislation, are governed by, and may be prosecuted to finality under, the law as it existed when the charter went into effect. Again, it must be added that we need not now consider the effect of this new provision in section 990 with regard to interest. Consideration of the question raised upon that head must be postponed until it arises in a proceeding commenced directly under the new charter; that is, since the 1st of January, 1898.

It follows that the order appealed from should be modified by striking out the provision referring the report back to the commissioners, and the report should be in all respects confirmed, without costs of this appeal. All concur.